**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| AHKEO LABS, LLC<br>6685 Beta Drive<br>Mayfield Village, OH,<br><br>   Plaintiff,<br><br> v.<br><br>PLURIMI INVESTMENT MANAGERS LLP<br>11 Waterloo Place<br>London SW1Y 4AM, UK,<br><br>   and<br><br>ALEXANDER MAXIMILIAN DUPEE<br>7 Montpelier Street,<br>London SW7 1HF, UK<br><br>   Defendants. | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT FOR INJUNCTIVE<br>RELIEF, SPECIFIC PERFORMANCE<br>AND DAMAGES**<br><br>**(JURY DEMAND ENDORSED<br>HEREON)** |

Plaintiff "Ahkeo Labs, LLC ("Ahkeo"), hereby sets forth its First Verified Complaint against Defendants Alexander Maximillian Schiff Dupee ("Dupee") and Plurimi Investment Managers LLP ("Plurimi") (together, "Defendants") as follows:

**NATURE OF CASE**

1. This is a simple breach of contract case that case arises from Defendants' failure to perform their obligations pursuant to the terms of a Credit Revolver Agreement (the "Revolver Agreement") between Plaintiff and Defendants. The Revolver Agreement Unambiguously required Defendants to make advances to Plaintiff of $6 million in February 2017, $9 million in March 2017, and in steadily increasing amounts each month thereafter. Defendants never made

any such advances to Plaintiff. As a result, Plaintiff is without the capital it was promised and that it desperately needs to fund its business operations.

## PARTIES

2. Plaintiff Ahkeo Labs LLC is a Delaware Limited Liability Company with its principle place of business located at headquartered at 6685 Beta Drive, Mayfield Village, OH 44143.

3. Defendant Plurimi Investment Managers LLP ("Plurimi") is a United Kingdom-based wealth and investment management firm with its principle place of business located at 11 Waterloo Place, London SW1Y 4AU, United Kingdom.

4. Defendant Alexander Maximillian Schiff Dupee ("Dupee") is an individual residing at 7 Montpelier Street, London SW7 1HF, United Kingdom, who serves as an Associate Director at Plurimi Investment Managers LLP working primarily as a wealth manager for high net worth individuals.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This court has personal jurisdiction over Defendants pursuant to R.C. 2307.382 because this matter arises out of Defendants' agreement to supply financial services in this state. Furthermore, Defendants have had continuous and systematic contacts with Plaintiff while Plaintiff was in Ohio for the purpose of transacting business.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

**FACTUAL BACKGROUND**

8. Defendant Plurimi is an independent partner owned wealth management firm that exists to "meet the financial needs of global entrepreneurs and sophisticated investors." With offices in London, Dubai and Gibraltar, Plurimi markets itself as "embrac[ing] flexible and dynamic asset allocation rather than the industry's traditional risk profiling approach." According to Plurimi, this "fresh approach" enables Plurimi's wealth management clients to have access to investment vehicles that "are not necessarily available at private banks."

9. In February 2017, Defendant Dupee held the title of Associate Director at Plurimi. On the Plurimi firm website, he was marketed as having a "international background" with a "primary focus on Middle Eastern Clients."

10. On February 7, 2017, in his role as Associate Director at Plurimi, Defendant Dupee held a business meeting with Plaintiff's Chairman and CEO, Brent Skoda, at the Plurimi offices in London. Defendant Dupee and Mr. Skoda had an existing relationship at the time of this meeting. Defendant Dupee knew that Mr. Skoda was from Ohio and that Plaintiff was an Ohio-based company.

11. The purpose of the meeting was to discuss a potential investment opportunity for Defendant Dupee's clients. Mr. Skoda informed Defendant Dupee that Plaintiff was seeking additional investors to service its existing debts and finance its ongoing business operations.

12. At the culmination of this meeting, Defendant Dupee agreed, on behalf of himself and his "affiliates," and Defendant Plurimi, to make a series of loans to Plaintiff to be used to fund Plaintiff's business purposes. The first loan in the amount of $6 million was to be made on February 7, 2017 and repaid on March 9, 2017. The second loan in the amount of $9 million was

to be made on March 7, 2017 and repaid on April 9, 2017. The loans from Defendants were to continue on a monthly basis, with a 50% increase in the amount of each loan over the prior month. These terms were memorialized in the Revolver Agreement, which was signed by Defendant Dupee inside of a conference room at Defendant Plurimi's London offices. Defendant Dupee listed his address on the signature block of the Revolver Agreement as that of Plurimi Investment Managers LLP, 11 Waterloo Place, London SW1Y 4AU, United Kingdom. A true and correct copy of the Revolver Agreement is attached hereto as Exhibit A.

13. In exchange for issuing these revolving loans, Defendants were to be paid escalating amounts in interest and investment banking fees. For example, for the two loans set forth in Schedule 1 of the Revolver Agreement, which were to be made in February and March of 2017, Defendants would receive approximately $754,500 in interest and fees.

14. The Revolver Agreement was entered into on February 7, 2017, the same date upon which the first loan was to be issued. In Section 6.3 of the Revolver Agreement, entitled "Investigation; Economic Risk," Defendants acknowledged that they "had an opportunity to discuss the business, affairs and current prospects" of Plaintiff, and that they were "able to fend for [themselves] in the transactions contemplated by [the Revolver Agreement] and [had] the ability to bear the economic risk of its investment."

15. At the time he signed the Revolver Agreement on behalf of himself and his "affiliates," Defendant Dupee was employed as an Associate Director of Defendant Plurimi and was acting as its agent. The Revolver Agreement was signed in Defendant Plurimi's London office, and the address of that office was provided by Defendant Dupee for the Lender in the Agreement's signature block.

16. Defendants did not provide the $6 million loan to Plaintiff on February 7, 2017.

4

3233448.2

Likewise, they did not provide the $9 million loan to Plaintiff on March 7, 2017, and have not provided any of the loans required thereafter.

17. Plaintiff made repeated requests of Defendant Dupee to comply with Defendants' obligations under the Revolver Agreement, but Defendant Dupee refused.

### FIRST CLAIM FOR RELIEF
### INJUNCTIVE RELIEF

18. Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

19. As set forth above, Defendants have failed to comply with the terms of the Revolver Agreement, the proceeds from which are desperately needed by Plaintiff to fund its business operations.

20. If Defendants are not temporarily restrained, and preliminarily and permanently enjoined by this Court from refusing to advance the loans required by the Revolver Agreement, Plaintiff will suffer immediate and irreparable injury and loss for which there is no adequate remedy at law.

21. The immediate and irreparable injury and loss to Plaintiff includes, but is not limited to, the loss and/or potential loss of business opportunities, customer relationships, intellectual property rights, human capital, credit worthiness, business reputation, and goodwill.

### SECOND CLAIM FOR RELIEF
### BREACH OF CONTRACT

22. Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

23. The Revolver Agreement is a valid contract between Plaintiff and Defendants.

24. The terms of the Revolver Agreement required Defendants to loan Plaintiff $6 million on February 7, 2017, $9 million on March 7, 2017, $13.5 million on April 7, 2017, and $20.25 million on May 7, 2017. The loans were to continue each month in amounts that were

50% larger than the loan issued the prior month.

25. Plaintiff never provided any loans to Plaintiff, and in failing to do so, breached the Revolver Agreement.

26. As a result of these breaches, Plaintiff has suffered substantial harm financial harm as well as the loss of business opportunities, customer relationships, intellectual property rights, human capital, credit worthiness, business reputation, and goodwill.

### THIRD CLAIM FOR RELIEF
### PROMISSORY ESTOPPEL

27. Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

28. Defendants made a promise to Plaintiff to provide funding for its business operations, including servicing its existing debt.

29. Plaintiff relied on Defendants' promise, and devised a business plan that was dependent on the loans being deliveredc.

30. Plaintiff's reliance on Defendants' promise was reasonable, as Defendants understood the nature of Plaintiff's business and are in the business of seeking high-yield investments for their wealth management clients.

31. As a result of Defendants' failure to fulfill their promises, Plaintiff has suffered substantial harm financial harm as well as the loss of business opportunities, customer relationships, intellectual property rights, human capital, credit worthiness, business reputation, and goodwill.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment on its Complaint and enter the following Orders:

3233448.2

     A.     An order of specific performance and/or injunctive relief requiring Plaintiff to advance the first loan contemplated by the Revolver Agreement in the amount of $6 million to the banking coordinates listed in Section 1.3 of the Revolver Agreement for the purposes set forth in Section 1.3(4) of the Revolver Agreement.

     B.     An award to Plaintiff of compensatory damages in an amount in excess of $75,000;

     C.     An award to Plaintiff of reasonable attorneys' fees and costs of this action;

     D.     An award to Plaintiff of prejudgment and post judgment interest; and

     E.     Such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

s/s Seth J. Linnick
John Q. Lewis (0067235)
Seth J. Linnick (0083494)
Tucker Ellis LLP
950 Main Avenue
Suite 1100
Cleveland, OH 44113-7213
Tel:    216.592.5000
Fax:   216.592.5009
E-mail:   john.lewis@tuckerellis.com
              seth.linnick@tuckerellis.com

*Attorneys for Plaintiff Ahkeo Labs, LLC*

3233448.2